**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA
JOHNSTOWN DIVISION**

| | |
|---|---|
| KEITH C. TOLBERT, | ) |
| | ) |
| Plaintiff | )    3:23-cv-00018 |
| | ) |
| vs. | )    RICHARD A. LANZILLO |
| | )    CHIEF UNITED STATES MAGISTRATE |
| | )    JUDGE |
| SECURITY CAPTAIN T. BOYCE, | ) |
| SECURITY OFFICER PAUL DABBS, C/O | ) |
| MARKS, ESTATE OF HEARING | )    MEMORANDUM OPINION ON |
| EXAMINER S. WIGGINS, MAILROOM | )    DEFENDANTS' MOTION TO DISMISS |
| SUPERVISOR C. WEIGLE, and | )    SECOND AMENDED COMPLAINT |
| SECURITY OFFICER GIBSON, | ) |
| | ) |
| Defendants | )    ECF No. 68 |

## I.      Introduction and Procedural History

Plaintiff, Keith C. Tolbert ("Tolbert"), proceeding *pro se*, is a prisoner in the custody of the Pennsylvania Department of Corrections ("DOC") and currently confined at the State Correctional Institution at SCI-Forest.  The gist of Tolbert's claims in this action is that the Corrections Defendants have engaged in a pattern of retaliatory punishments against him based on his protected activities, namely filing lawsuits against DOC employees and filing a grievance against Defendant Paul Dabbs. Tolbert's operative pleading is the verified Second Amended Complaint ("SAC") filed on November 29, 2023, against six DOC employees related to events that occurred while Tolbert was confined at SCI-Somerset:  Security Captain T. Boyce, Security Officer Paul Dabbs, C/O Marks, Estate of Hearing Examiner S. Wiggins, Mailroom Supervisor C. Weigle, and Security Officer Gibson (collectively, the "Corrections Defendants").  *See* ECF No. 63.  Tolbert's SAC asserts seven claims: four claims pursuant to 42 U.S.C. § 1983 for violating his rights under the First and Fourteenth Amendments to the United States Constitution

1

(Counts I – IV), and three Pennsylvania state law tort claims, one each for negligence (Count V), defamation (Count VI), and assumpsit (Count VII).  Tolbert seeks compensatory and punitive damages.  All Defendants are sued only in their individual capacities.  *Id.*, ¶ 9.

Tolbert initiated this civil rights case on January 27, 2023, by filing a motion to proceed *in forma pauperis* ("IFP Motion") in the United States District Court for the Eastern District of Pennsylvania.  *See* ECF No. 1.  On January 31, 2023, that case was transferred to this Court, as the events giving rise to Tolbert's claims occurred at SCI-Somerset, and docketed at Case No. 3:23-cv-00018.  ECF No. 4.

On February 1, 2023, Tolbert's IFP Motion was denied without prejudice as he had failed to submit the financial information required by 28 U.S.C. § 1915(a).  ECF No. 8.  Tolbert submitted later a second IFP Motion and attached the requisite financial information.  ECF No. 9.  The IFP Motion was granted on February 22, 2023.  *See* ECF No. 11.  The Corrections Defendants moved to dismiss the complaint.  ECF No. 36.  Tolbert was ordered to either file a response to the motion to dismiss or file an amended complaint.  ECF No. 38.  On September 18, 2023, Tolbert filed a timely amended complaint (ECF No. 52), and the then pending motion to dismiss was denied as moot.  ECF No. 53.

On October 10, 2023, the Corrections Defendants moved to dismiss the amended complaint.  (ECF No. 56).  Rather than filing a response to the motion to dismiss, Tolbert filed the SAC, which remains his operative pleading.  ECF No. 63.  Defendants now move to dismiss the SAC.  ECF No. 67.  Tolbert has filed a response in opposition.  ECF No. 79.  The matter is ripe for disposition.[1]

---

[1] This Court has subject-matter jurisdiction over this action pursuant to 28 U.S.C. §§1331 and 1343, and it can exercise supplemental jurisdiction over the state-law claims under 28 U.S.C. § 1337.  The parties have consented to the jurisdiction of a United States Magistrate Judge to

## II.      Standard of Review

The Corrections Defendants move to dismiss Tolbert's SAC under Federal Rule of Civil Procedure 12(b)(6).  A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of the complaint.  *See Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993).  In deciding a Rule 12(b)(6) motion to dismiss, the court must accept as true all well-pled factual allegations in the complaint and views them in a light most favorable to the plaintiff.  *See U.S. Express Lines Ltd. v. Higgins*, 281 F.3d 383, 388 (3d Cir. 2002).  The "court[ ] generally consider[s] only the allegations in the complaint, exhibits attached to the complaint, matters of public record, and documents that form the basis of a claim" when considering the motion to dismiss.  *Lum v. Bank of Am*., 361 F.3d 217, 222 n.3 (3d Cir. 2004) (citing *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997)).

In making its determination under Rule 12(b)(6), the court is not opining on whether the plaintiff is likely to prevail on the merits; rather, the plaintiff must only present factual allegations sufficient "to raise a right to relief above the speculative level."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007) (citing 5 C. Wright & A. Miller, Federal Practice and Procedure § 1216, pp. 235-36 (3d ed. 2004)).  *See also Ashcroft v. Iqbal*, 556 U.S. 662 (2009).  Furthermore, a complaint should only be dismissed under Rule 12(b)(6) if it fails to allege "enough facts to state a claim to relief that is plausible on its face."  *Twombly*, 550 U.S. at 570 (rejecting the traditional Rule 12(b)(6) standard established in *Conley v. Gibson*, 355 U.S. 41, 78 (1957)).

---

conduct all proceedings in this case, including the entry of final judgment, as authorized by 28 U.S.C. § 636.  The case was originally assigned to Magistrate Judge Cynthia Reed Eddy.  Due to the retirement of Judge Eddy, the case was reassigned to the undersigned.

While a complaint does not need detailed factual allegations to survive a motion to dismiss, it must provide more than labels and conclusions.  *See Twombly*, 550 U.S. at 555.  A "formulaic recitation of the elements of a cause of action will not do." *Id*. (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).  Moreover, a court need not accept inferences drawn by a plaintiff if they are unsupported by the facts as explained in the complaint.  *See California Pub. Emp. Ret. Sys. v. The Chubb Corp*., 394 F.3d 126, 143 (3d Cir. 2004) (citing *Morse v. Lower Merion Sch. Dist*., 132 F.3d 902, 906 (3d Cir. 1997)).  Nor must the court accept legal conclusions disguised as factual allegations.  *See Twombly*, 550 U.S. at 555; *McTernan v. City of York Pennsylvania*, 577 F.3d 521, 531 (3d Cir. 2009) ("The tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions."). Expounding on the *Twombly/Iqbal* line of cases, the Court of Appeals for the Third Circuit has articulated a three-step approach:

> First, the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.' Second, the court should identify allegations that, 'because they are no more than conclusions, are not entitled to the assumption of truth.' Finally,' where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief.'

*Burtch v. Milberg Factors, Inc*., 662 F.3d 212, 221 (3d Cir. 2011) (quoting *Santiago v. Warminster Twp.*, 629 F.3d 121, 130 (3d Cir. 2010)).  This determination is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

Finally, because Tolbert is proceeding pro se, the allegations in the SAC must be held to "less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner*, 404 U.S. 519, 520-521 (1972).  If the court can reasonably read Tolbert's SAC to state a claim upon which

4

relief can be granted, it will do so despite his failure to cite proper legal authority, confusion of legal theories, poor syntax, and sentence construction, or unfamiliarity with pleading requirements.  *See Boag v. MacDougall*, 454 U.S. 364 (1982); *United States ex rel. Montgomery v. Bierley*, 141 F.2d 552, 555 (3d Cir. 1969) (petition prepared by a prisoner may be inartfully drawn and should be read "with a measure of tolerance").

With these standards in mind, the Court now turns to Tolbert's SAC and the Corrections Defendants' motion to dismiss.

## III.    Factual Allegations

In his SAC, Tolbert alleges the following facts, which are accepted as true for purposes of the Corrections Defendants' motion to dismiss:[2]

On July 24, 2021, Tolbert was in solitary confinement at SCI-Somerset.  On that day, Defendant Paul Dabbs, a security officer, brought legal mail to him and ordered Tolbert to sign a form to show proof he received the legal mail.  *Id.*, ¶¶ 11, 12.  Defendant Dabbs then took the legal mail to be tested for contraband.  *Id.*  Tolbert contends Defendant Dabbs became aware that Tolbert was litigating a civil lawsuit against DOC employees when he illegally read Tolbert's legal mail.  *Id.*, ¶¶ 13, 14.[3]

Defendant Dabbs later returned to Tolbert's cell and notified him that the legal mail had tested positive for an unknown substance and issued Tolbert a confiscation slip.  *Id.*, ¶ 15. Tolbert alleges that Defendant Dabbs intentionally scanned Tolbert's legal mail incorrectly to

---

[2] The Court accepts as true the facts as they appear in the Verified Second Amended Complaint and draws all possible inferences from those facts in the light most favorable to Morris.  *Phillips v. County of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008); *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972).

[3] At the time, Tolbert's case filed in the Court of Common Pleas of Montgomery County, *Tolbert v. Pennsylvania Department of Corr., et al.*, was pending.  SAC, ¶ 16.

produce a false positive.  *Id.*, ¶ 16.  Tolbert requested Defendant Dabbs to tell him which court

sent the legal mail, but Defendant Dabbs refused and stated, "Now don't go writing no

grievances about this Tolbert let's handle this the nice way."  *Id.*, ¶¶ 17-18. Defendant Dabbs

then brought the confiscated mail to Defendant Boyce, the security captain, and discussed with

Defendant Boyce the fact that Tolbert's legal mail pertained to a lawsuit against prison officials

at SCI-Phoenix.  *Id.*, ¶ 19.  Tolbert contends that at some point a meeting took place in which

Corrections Defendants Dabbs, Boyce, Marks, Gibson, Wiggins, and Weigle "agreed to form a

silent conspiracy to retaliate against Plaintiff" for filing a lawsuit against prison officials at SCI-

Phoenix.  *Id.*, ¶ 20.  He alleges that the false positive for drugs and the later withholding of his

legal mail were retaliatory actions done with the intention to deny Tolbert access to the courts.

*Id.*, ¶¶ 16, 20.  On August 4, 2021, Tolbert filed a grievance relating to the confiscation of his

legal mail by Defendant Dabbs.  *Id.*, ¶ 22; Grievance No. 939240.[4]

After learning of his pending lawsuit against DOC officials and the filing of his grievance

against Defendant Dabbs for improperly handling his mail, the Corrections Defendants allegedly

formed a "strategic covert scheme" to further retaliate against Tolbert.  Tolbert claims that the

Corrections Defendants engaged in a pattern of "retaliatory punishment" against him, including,

but not limited to, Defendant Marks issuing a "sham" misconduct on September 1, 2021

(Misconduct D612879); Defendant Gibson reissuing the "sham" misconduct (Misconduct

D612973), and improperly changing the facts and adding an additional sanction; the interference

with his legal mail, the loss of phone and visitation privileges; the placement in solitary

confinement from September 13 through October 5, 2021; and the indefinite suspension of

---

[4] Although exhibits are referenced in the SAC, there are no exhibits attached.  The referenced
exhibits appear to be those exhibits that were those attached to the First Amended Complaint.
ECF No. 52-1.

Tolbert's contact visits "without cause."  Tolbert contends that by keeping him in solitary confinement, the Corrections Defendants knew "he would have limited access to the legal materials and legal assistance necessary to prepare his pleadings, briefs, and motions while litigating his case," which was done intentionally to deny him access to the courts.  *Id.*, ¶ 20. Tolbert claims that "but for the retaliatory conduct of" the Corrections Defendants, "he would not have lost his nonfrivolous and arguable . . . claims against Dr. Stephen Weiner."  *Id.*, ¶ 97.[5]

The SAC also includes allegations that Tolbert sustained physical injuries because of the Corrections Defendants' actions.  After his misconduct hearing, he allegedly was "aggressively" handcuffed and dragged to solitary confinement and thrown into a cold, dark mold-infested cell without a mattress for 3 days," resulting in:

> further exacerbation and worsening of preexisting injuries such as . . . pinched nerve injury in Plaintiff's left shoulder and neck, lower back bone spurring and narrowing of cervical disc spaces, left ulnar nerve damage causing left hand paralysis and crowing, posttraumatic neuropathic facial pain, posttraumatic headache, traumatic brain injury, and post-concession syndrome symptoms . . ..

*Id.*, ¶ 45.

A second confiscation of Tolbert's legal mail occurred on October 7, 2021. On that day, Defendant Marks told Tolbert that his legal mail had been confiscated because it again tested positive for drugs.  *Id.*, ¶¶ 62, 63.

---

[5] *See Tolbert v. PA Dep't of Corr., et al.*, Civil Action No. 2:22-cv-1182 (E.D. Pa.), public docket, https://paed-ecf.sso.dcn/doc1/153120823072.  This case stems from an incident at SCI-Phoenix in which Tolbert was assaulted by other inmates. Tolbert sued Dr. Weiner, the medical director at SCI-Phoenix, alleging that Dr. Weiner had failed to protect him by prematurely releasing him from the infirmary several months before the attack occurred.  On March 28, 2023, that claim was dismissed with prejudice as barred by the statute of limitations and Defendant Weiner was dismissed as a defendant.  Tolbert's remaining claims against two corrections officers remains pending.

Tolbert also claims that Defendant Weigle, the mailroom supervisor at SCI-Somerset, failed to notify Tolbert three times that his legal mail had been refused and rejected.[6]  *Id.*, ¶ 56.[7] When Tolbert asked Defendant Weigle about this, she replied that it was the post office that was rejecting the mail, not the SCI-Somerset mailroom, although Tolbert claims he received copies of the rejected legal mail envelopes that indicate that the SCI-Somerset Mailroom rejected his legal mail.  Tolbert also asserts that on December 9, 2021, he received "damaged legal mail." *Id.*, ¶ 72.

On February 1, 2022, Tolbert was summoned to the Security Office at SCI-Somerset where he spoke with Captain Turner, the new security captain.  According to Tolbert, Captain Turner "confessed to Plaintiff while in his Office that he had personal knowledge confirming that Defendant Boyce, Defendant Dabbs, Defendant Marks, Defendant Gibson, Defendant Wiggins, and Defendant Weigle conspired to retaliate against Plaintiff for filing lawsuits against prison officials at SCI-Phoenix and filing a grievance [sic] on Defendant Dabbs." *Id.*, ¶ 76.  Tolbert then asserts that Captain Turner "directed Plaintiff to file the instant civil rights actions because he did not have the authority to give him the compensatory and special damages he requested from the DOC."  Captain Turner also conveyed that Defendant Boyce was removed from his position as Security Captain at SCI-Somerset "because of a panoply of retaliatory and abusive acts against prisoners at SCI-Somerset." *Id.*, ¶ 78.

---

[6] Paragraph 70 of the SAC states that Defendant Weigle refused and returned mail sent to Tolbert by the Prothonotary of Montgomery County on 4/27/2021, 5/27/2021, and 7/14/2021.

[7] Tolbert references two additional cases he filed in Montgomery County against DOC prison officials, Docket Nos. 2020-18123 and 2020-18124, but no information about these cases is in the SAC.  *See* ¶ 56 of the SAC.  In Tolbert's response to the motion to dismiss, he states he filed multiple lawsuits against DOC prison officials at SCI Phoenix:  case nos. 22-1228, 22-1182, 2020-18123, and 2020-113282.  (ECF No. 79 at p. 11).

Tolbert filed this lawsuit approximately a year later on January 27, 2023.  ECF No. 1.

## IV.    The Legal Claims of the Second Amended Complaint

The SAC organizes Tolbert's claims into the following seven counts:

● Count I asserts a civil conspiracy claim against Corrections Defendants Boyce, Dabbs, Marks, Gibson, Wiggins, and Weigle;

● Count II asserts a First Amendment retaliation claim against Corrections Defendants Boyce, Dabbs, Marks, Gibson, Wiggins, and Weigle;

● Count III asserts a First Amendment denial of access to courts claim against Corrections Defendants Boyce, Dabbs, Marks, Gibson, Wiggins, and Weigle;

● Count IV asserts a Fourteenth Amendment due process claim against Corrections Defendants Wiggins;

● Count V asserts a Pennsylvania state law negligence claim against Corrections Defendants Boyce, Dabbs, Marks, Gibson, Wiggins, and Weigle;

● Count VI asserts a Pennsylvania state law defamation claim against Corrections Defendants Marks and Gibson; and

● Count VII asserts a Pennsylvania state law assumpsit claim against Corrections Defendants Boyce, Dabbs, Marks, Gibson, Wiggins, and Weigle.

## V.    Discussion

The Corrections Defendants argue that (1) each of Tolbert's constitutional claims should be dismissed because the SAC fails to allege facts sufficient to support any claim's essential elements, and (2) Tolbert's state law tort claims should be dismissed because the Corrections Defendants enjoy state sovereign immunity.  The Court will address these arguments in turn.

### A.  **The Constitutional Claims**

Tolbert brings his constitutional claims against the Corrections Defendants under 42

U.S.C. § 1983, which provides:

> Every person who, under color of any statute, ordinance,
> regulation, custom, or usage, of any State or Territory, subjects, or
> causes to be subjected, any citizen of the United States or other
> person within the jurisdiction thereof to the deprivation of any
> rights, privileges, or immunities secured by the Constitution and
> laws, shall be liable to the party injured in an action at law, suit in
> equity, or other proper proceeding for redress.

To prevail on a claim pursuant to § 1983, a plaintiff must establish that a defendant, acting under

color of state law, deprived the plaintiff of a right secured by the Constitution or laws of the

United States.  *Est. of Smith v. Marasco*, 430 F.3d 140, 151 (3d Cir. 2005); 42 U.S.C. § 1983.

As its language connotes, § 1983 "is not a source of substantive rights but a vehicle for

vindicating rights conferred by the U.S. Constitution or by federal statute." *DiBella v. Borough*

*of Beachwood*, 407 F.3d 599, 601 (3d Cir. 2005) (citation omitted).  Accordingly, "[t]he first step

in any such claim is to identify the specific constitutional right allegedly infringed."  *Albright v.*

*Oliver*, 510 U.S. 266, 271 (1994).  The SAC alleges a civil conspiracy claim, a First Amendment

retaliation claim, a First Amendment access to courts claim, and a Fourteenth Amendment due

process claim.  The Corrections Defendants do not dispute that they were acting under color of

state law at all times relevant to the SAC.  Thus, the Court's analysis focuses on whether the

Corrections Defendants deprived Tolbert of a right secured by the Constitution of the United

States.  Tolbert's constitutional claims will be addressed in turn.

### 1.  The SAC fails to allege facts sufficient to support a conspiracy claim against the Corrections Defendants (Count I)

Because § 1983 itself does not create a cause of action for conspiracy, a plaintiff must

show that two or more conspirators agreed to deprive him of a constitutional right under color of

law.  *Parkway Garage, Inc. v. City of Philadelphia*, 5 F.3d 685, 700 (3d Cir. 1983*), abrogated on other grounds by United Artists Theatre Circuit Inc. v. Twp. of Warrington*, 316 F.3d 392 (3d Cir. 2003).  To state a civil rights conspiracy claim, the plaintiff must plausibly allege: "1) the specific conduct that violated the plaintiff's rights, 2) the time and the place of the conduct, and 3) the identity of the officials responsible for the conduct."  *Sanchez v. Coleman*, Civ. Act. No. 2:13-cv-0982, 2014 WL 7392400, at *9 (W.D. Pa. Dec. 11, 2014) (citing *Oatess v. Sobolevitch*, 914 F.2d 428, 431 n.8 (3d Cir. 1990)).  Critical to this claim is the complaint's "factual allegations of combination, agreement, or understanding among all or between any of the defendants [or coconspirators] to plot, plan, or conspire to carry out the alleged chain of events."  *Id.* (quoting *Spencer v. Steinman*, 968 F. Supp. 1011, 1020 (E.D. Pa. 1997)).  *See also Loftus v. Southeastern Pa. Transp. Auth.*, 843 F. Supp. 981, 987 (E.D. Pa. 1994) ("[w]hile the pleading standard under [Fed. R. Civ. Proc.] Rule 8 is a liberal one, mere incantation of the words 'conspiracy' or 'acted in concert' does not talismanically satisfy the Rule's requirements").  Bare allegations that "[d]efendants engaged in a concerted action of a kind not likely to occur in the absence of agreement" are insufficient.  *Id.*  It is also "insufficient to allege that 'the end result of the parties' independent conduct caused plaintiff harm or even that alleged perpetrators of the harm acted in conscious parallelism."  *Parness v. Christie*, Civ. Act. No. 15-3505, 2015 WL 4997430, at *11 (D.N.J. Aug. 19, 2015) (quoting *Desposito v. New Jersey*, Civ. Act. No. 14-1641, 2015 WL 2131073, at *14 (D.N.J. May 5, 2015)).

Here, Tolbert asserts that a "meeting" took place where the co-defendants "agreed to form a silent conspiracy" to retaliate against him "for filing a lawsuit against prison officials at SCI-Phoenix by lodging false misconducts on Plaintiff in order to keep him in solitary confinement . . . ."  *See* SAC, at ¶ 20.  He speculates that the conspiracy against his civil rights

11

began around July 24, 2021, after Defendant Dabbs confiscated and improperly read his legal mail. *Id.*, ¶¶ 11 -19.

Even under the most charitable reading, the SAC fails to state a civil rights conspiracy claim against any Defendant. "[T]he allegations of conspiracy must be grounded firmly in facts; they cannot be conclusory nor can they hinge on bare suspicions and foundationless speculation." *Reed v. Harpster*, 506 Fed. Appx. 109, 111 (3d Cir. 2012) (citing *Young v. Kann*, 926 F.2d 1396, 1405 n.16 (3d Cir. 1991) (affirming dismissal of conspiracy claims based on mere suspicion and speculation)). Tolbert's conclusory allegations fall far short of supporting a plausible inference of an agreement or concerted effort among any combination of Defendants to harm him. Tolbert's foundationless conspiracy claims must be dismissed.

2. <u>First Amendment Claims</u>

The First Amendment provides:

> Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press, or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances.

U.S. Const. amend. I. The SAC asserts First Amendment retaliation and access to court claims. The Corrections Defendants argue that the SAC includes insufficient factual allegations to support either claim. The Court will first address Tolbert's retaliation claim, followed by his access to courts claim.

a. *The SAC alleges facts sufficient to support a First Amendment retaliation claim (Count II)*

It is well settled that retaliation for the exercise of a constitutionally protected activity is itself a violation of rights secured by the Constitution, which is actionable under section 1983. *Rauser v. Horn*, 241 F.3d 330 (3d Cir. 2001). "Government actions, which standing alone do not

violate the Constitution, may nonetheless be constitutional torts if motivated in substantial part by a desire to punish an individual for the exercise of a constitutional right." *Rauser*, 241 F.3d at 333 (quoting *Allah v. Seiverling*, 229 F.3d 220, 225 (3d Cir. 2000)) (quoting *Thaddeau-X v. Blatter*, 175 F.3d 378, 386 (6th Cir. 1999) (en banc)).

That said, merely alleging the fact of retaliation is insufficient; a prisoner asserting a retaliation claim must allege facts to support findings that (1) he engaged in constitutionally protected conduct; (2) prisoner officials took an adverse action against the plaintiff that was "sufficient to deter a person of ordinary firmness from exercising his [constitutional] rights"; and (3) the existence of "a causal link between the exercise of his constitutional rights and the adverse action taken against him." *Rauser*, 241 F.3d at 333 (quoting *Allah*, 229 F.3d at 225).

The allegations of Tolbert's SAC support each of these elements. As for the first element, Tolbert engaged in constitutionally protected activity by filing lawsuits against the DOC and filing a grievance against Defendant Dabbs. The second element is also satisfied because federal courts in this Circuit have repeatedly found that the filing of an allegedly false misconduct which results in a prisoner being sanctioned to disciplinary confinement may reasonably deter a person of ordinary firmness from engaging in constitutionally protected activity. *See., e.g.*, *Mitchell v. Horn*, 318 F.3d 523, 530 (3d Cir. 2003) (holding that prisoner's allegations that he was falsely charged with misconducts in retaliation for filing complaints against a correctional officer sufficiently alleged a retaliation claim).

Finally, Tolbert may support an inference of causation by alleging facts to show either (1) an unusually suggestive temporal proximity between the protected activity and the allegedly retaliatory action; or (2) a pattern of antagonism coupled with timing that suggests a causal link. *McKee v. Hart*, 436 F.3d 165, 170 (3d Cir. 2006) (citing *Lauren W. ex rel. Jean W. v.*

*DeFlaminis*, 480 F.3d 259, 267 (3d Cir. 2007)).  "These are not the exclusive ways to show causation, as the proffered evidence, looked at as a whole, may suffice to raise the inference." *Farrell v. Planters Lifesavers Co*., 206 F.3d 271, 280 (3d Cir. 2000) (quoting *Kachmar v. SunGard Data Sys., Inc*., 109 F.3d 173, 177 (3d Cir. 1997)). Here, the timing of the statements and actions of the parties as alleged in the SAC support both means of proving causation. Because the allegations of the SAC support all three elements of a First Amendment retaliation claim, the Corrections Defendants' motion must be denied as to this claim.

      b.  *The SAC fails to allege facts sufficient to support a First Amendment access to courts claim (Count III)*

      Tolbert alleges that the Corrections Defendants violated his right of access to the courts by placing him in solitary confinement which "hindered his ability to prepare a nonfrivolous and arguable" claim against a prison doctor . . . ."  Resp. at p. 25; SAC, at ¶ 79.  Specifically, Tolbert contends that the Corrections Defendants' retaliatory conduct prevented him from accessing the Main Law Library and its legal research materials, which in turn prevented him from doing "complex legal research necessary" to put forth his complaint in a "legally acceptable manner" before the statute of limitations ran out on December 12, 2021.

      The Corrections Defendants argue that Tolbert's access to courts claim should be dismissed because he has not established that he suffered an actual injury.  The Corrections Defendants contend that assuming, without conceding, that Tolbert's prior case against an attending physician at SCI-Phoenix[8] was "nonfrivolous and arguable," Tolbert has failed to show a causal nexus between the alleged interference with access to the courts and the injury he sustained.

---

[8] *Keith Tolbert v. PA Dep't of Corr., et al*, Case No. 2:22-cv-01182 (E.D. Pa).

14

Prisoners maintain a fundamental constitutional right to access the courts. *Monroe v. Beard*, 536 F.3d 198, 205 (3d Cir. 2008) (citing *Lewis v. Casey*, 518 U.S. 343, 346 (1996)). When prisoners allege that institutional defendants have "inhibited their opportunity to present a past legal claim, they must allege facts to show: (1) that they suffered an 'actual injury' - that they lost a chance to pursue a 'nonfrivolous' or 'arguable' underlying claim; and (2) that they have no other 'remedy that may be awarded as recompense' for the lost claim other than in the present denial of access suit." *Id*. at 205-06 (quoting *Christopher v. Harbury*, 536 U.S. 403, 415 (2002)). The complaint must "describe the underlying arguable claim well enough to show that it is 'more than mere hope,' and it must describe the 'lost remedy.' " *Id*. (quoting *Christopher*, 536 U.S. at 416-17). The plaintiff must also demonstrate that the denial of access caused the alleged injury to occur. *Tinsley v. Gloria*, 369 Fed. Appx. 378, 381 (3d Cir. 2010) (citing *Lewis*, 518 U.S. at 352-54).

Here, Tolbert's claim rests solely on the allegation that because he was placed in solitary confinement he was not able to adequately research a statute of limitations issue. Such a claim may constitute "actual injury" for an access to the courts claim. *See Lewis v. Casey*, 518 U.S. 343, 351 (1996) (holding that actual injury may be established if a complaint a prisoner prepared was dismissed for failure to satisfy some technical requirement which, because of the deficiencies in the prison's legal assistance facilities, the prisoner was unable to file a complaint alleging actional harm). However, as will be explained, such a claim is not presented here.

A review of the public docket in the case *Tolbert v. PA Dep't of Corr.*, *et al.,* Civil Action No. 2:22-cv-1182 (E.D. Pa.), reflects that on March 16, 2022, Tolbert filed a civil rights action in the United States District Court for the Eastern District of Pennsylvania against three defendants, including Dr. Steven Weiner. In that case, Tolbert referred to a November 28, 2019, facial

15

reconstruction surgery and a December 11, 2019, fall in which he re-injured his surgically repaired face, as well as sustaining new fall-related injuries. *See* SAC, at ¶¶81-91. He brought an Eighth Amendment failure to protect claim against Dr. Weiner arguing that Dr. Weiner failed to protect him by prematurely releasing him from the infirmary on December 12, 2019. *Id.* ¶ 92. The District Court dismissed the claim against Dr. Weiner finding that the claim was time barred as the two-year statute of limitations began to run on the claim on December 12, 2019. *See* Opinion, 3/28/2023.[9]

Fatal to Tolbert's access to courts claim is that the District Court found that the statute of limitations on his claim against Dr. Weiner expired on December 12, 2021. The SAC reflects that Tolbert was released from solitary confinement on October 7, 2021, two months before the expiration of the statute of limitations, and Tolbert did not file his federal lawsuit until March 22, 2022. The Court finds therefore that Tolbert has not adequately alleged that he suffered an "actual injury" due to his confinement in solitary confinement and the Corrections Defendants' motion to dismiss Tolbert's access to courts claim will be granted.

### 3. The more specific provision rule bars the Fourteenth Amendment due process claim against Defendant Weigle (Count IV)

Under the Fourteenth Amendment, states may not deprive "any person" of their "life, liberty, or property, without due process of law . . . ." U.S. Const. amend. XIV, § 1. Tolbert claims his Fourteenth Amendment rights were violated when Defendant Weigle refused and rejected his legal mail. The Corrections Defendants argue that the claim is barred by the more specific provision rule.

---

[9] The public docket also reflects that the case is open and DOC defendants Baldwin and Morgan have moved for summary judgment. The claims remaining involve an assault on Tolbert by two other prisoners which occurred on March 2020.

In Count IV of the SAC, Tolbert claims his Fourteenth Amendment right to due process was violated by Defendant Weigle "refusing and rejecting his legal mail." SAC, at ¶ 71.[10]  The Court agrees with the Corrections Defendants that this claim is barred by the more-specific provision rule.  Under this rule, "[w]here a particular Amendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, that Amendment, not the more generalized notion of substantive due process, must be the guide for analyzing these claims." *Albright v. Oliver*, 510 U.S. 266, 273 (1994); *see United States v. Lanier*, 520 U.S. 259, 272 n.7 (1997) ("if a constitutional claim is covered by a specific constitutional provision, such as the Fourth or Eighth Amendment, the claim must be analyzed under the standard appropriate to that specific provision, not under the rubric of substantive due process.").

In this case, Tolbert's Fourteenth Amendment claim against Defendant Weigle is properly analyzed under the rubric of the First Amendment, as discussed *supra*.  *See* SAC, ¶ 101. Therefore, the Corrections Defendants' motion will be granted as to Tolbert's Fourteenth Amendment due process claim against Defendant Weigle and that claim will be dismissed with prejudice.

---

[10] To the extent Tolbert may be attempting to state a Fourteenth Amendment claim based on the loss or destruction of his personal property, that claim also fails. Tolbert has no basis for a Fourteenth Amendment claim of deprivation of property without due process because he had a meaningful post-deprivation remedies for the loss available to him.  *See Hudson v. Palmer*, 468 U.S. 517, 533 (1984) ("[A]n unauthorized intentional deprivation of property by a state employee does not constitute a violation of the procedural requirements of the Due Process Clause of the Fourteenth Amendment if a meaningful post-deprivation remedy for the loss is available.").  Tolbert had the right to file a grievance through the prison administrative process or to file a conversion and replevin action in state court.

### B. **State Law Claims**

Tolbert also asserts Pennsylvania state law claims of negligence (Count V), defamation (Count VI), and assumpsit (Count VII).  The Corrections Defendants submit that sovereign immunity bars the state law claims against them.

In general, employees of the Commonwealth of Pennsylvania acting within the scope of their duties enjoy sovereign immunity.  *Angle v. Smith*, Civ. Act. No. 1:22-cv-0033, 2023 WL 287325, at *8 (citing *Walton v. Harkleroad*, No. 2:13-cv-1109, 2016 WL 11480713, at *7 (W.D. Pa. Mar. 3, 2016) (*citing* 1 Pa. C.S. § 2310)).  Under Pennsylvania law:

> Conduct of [an employee] is within the scope of employment if, but only if: (a) it is of the kind he is employed to perform; (b) it occurs substantially within the authorized time and space limits; (c) it is actuated, at least in part, by a purpose to serve the [employer], and (d) if force is intentionally used by the [employee] against another, the use of force is not unexpectable by the [employer].

*Fought v. City of Wilkes-Barre, Pennsylvania,* 466 F. Supp.3d 477, 521 (M.D. Pa. 2020) (quoting Restatement (Second) of Agency § 228(1) (1958)).  An employee can be found to be acting within the scope of their employment even where the employee acts intentionally or criminally.  *Tibbens v. Snyder*, Civ. Act. No. 1:18-cv-2112, 2020 WL 5372097, at *5 (M.D. Pa. June 24, 2020).  Conduct falls outside the scope of employment if the conduct is done in an outrageous manner.  *Abney v. Younker*, No. 1:13-CV-1418, 2019 WL 7812383, at *9 (M.D. Pa. Oct. 3, 2019), *report and recommendation adopted*, No. 1:13-CV-01418, 2020 WL 488894 (M.D. Pa. Jan. 30, 2020).

### 1. *Sovereign immunity bars the negligence claim against the Corrections Defendants (Count V)*

"[T]o prevail on a cause of action in negligence under Pennsylvania law, a plaintiff must establish: (1) a duty or obligation recognized by the law, requiring the actor to conform to a

18

certain standard of conduct; (2) a failure to conform to the standard required; (3) a causal connection between the conduct and the resulting injury; and (4) actual loss or damage resulting to the interests of another." *Kleinknecht v. Gettysburg Coll.*, 989 F.2d 1360, 1366 (3d Cir. 1993).

Tolbert alleges in Count V of the SAC that the Corrections Defendants "are liable for negligence acts that directly caused the loss/damage to Plaintiff's personal property (i.e., confiscated legal mail) . . . ." SAC, at ¶ 104. There is nothing in the SAC from which a reasonable factfinder might infer that the Corrections Defendants were not at all times acting within the scope of their employment. *See Mitchell v. Luckenbill*, 680 F.Supp.2d 672, 682 (M.D. Pa. 2010) (identifying the requirements for an action to fall within the scope of employment under Pennsylvania law). Thus, sovereign immunity applies. The Corrections Defendants' motion will be granted as to Count V of the SAC and the state law negligence claim will be dismissed with prejudice.

### 2. *Sovereign immunity bars the state law defamation claim (Count VI)*

Tolbert contends that the Corrections Defendants Marks and Gibson "are liable for the defamation and libelous acts that caused irreparable and insufferable harm to Plaintiff's reputation . . . ." SAC, at ¶ 105. To state a defamation claim under Pennsylvania law, the plaintiff must allege facts to support:

> (1) the defamatory character of the communication; (2) its publication by Defendant; (3) its application to Plaintiff; (4) the understanding by the recipient of its defamatory meaning; (5) the understanding by the recipient of it as intended to be applied to Plaintiff.

*Williams v. Pa. Dep't of Corr.*, Civ. Act. No. 2:20-cv-0794, 2023 WL 2655406, at *15 (W.D. Pa. 2023), *report and recommendation adopted*, *Williams v. Pa. Dep't of Corr.*, 2023 WL 2652298 (W.D. Pa. 2023). Furthermore, "[i]n Pennsylvania, a defamatory statement is one that 'tends to

so harm the reputation of another as to lower him in the estimation of the community or to deter

third persons from associating or dealing with him'." *Id.* (quoting *Resnick v. Manfredy,* 52 F.

Supp. 2d 462, 470 (E.D. Pa. 1999) (quoting *U.S. Healthcare, Inc. v. Blue Cross of Greater

*Phila.,* 898 F.2d 914, 922 (3d Cir. 1990))).

The Court need not reach the merits of Tolbert's defamation claims against Defendants

Marks and Gibson, however, because such claims are barred by Pennsylvania sovereign

immunity.  Thus, Tolbert's defamation claims fail as a matter of law and will be dismissed with

prejudice.

### 3. *Sovereign immunity bars the state law assumpsit claim (Count VII)*

Tolbert claims that the Corrections Defendants "are liable for assumpsit acts, for this

breach of their implied promise to handle Plaintiff's personal property (i.e. confiscated legal

mail) with care and to reimburse Plaintiff for his unreturned confiscated legal mail and

compensation for damages . . . ."  SAC, at ¶ 106.  The confiscation of Tolbert's mail, "even if

wrongful, necessarily [was ] committed within the scope of" the Corrections Defendants'

employment duties.  *Hill v. Barnacle*, 655 F. App'x 142, 148 (3d Cir. 2016). Thus, sovereign

immunity shields defendants from the state law claim of assumpsit and, as a result, the motion to

dismiss Count VII of the SAC will be granted and the state law assumpsit claim will be

dismissed with prejudice.

## VI.   Leave to Amend

Having determined that the SAC fails to state certain claims, the Court must now

determine whether further amendment of that pleading would be futile.  The Court of Appeals

for the Third Circuit has instructed that if a civil rights complaint is vulnerable to dismissal for

failure to state a claim, the Court should permit a curative amendment unless an amendment

would be inequitable or futile.  *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108 (3d Cir. 2002).  The Court may deny leave to amend where there is "undue delay, bad faith[,] or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of the amendment." *Foman v. Davis*, 371 U.S. 178, 182 (1962).  And though "the grant or denial of an opportunity to amend is within the discretion of the District Court," it may not "outright refus[e] to grant the leave without any justifying reason appearing for the denial." *Id*. These instructions are equally applicable to pro se litigants and those represented by counsel. *Alston v. Parker*, 363 F.3d 229, 235 (3d Cir. 2004).

Tolbert has twice been advised of the deficiencies in his claims and twice afforded the opportunity to amend to cure those deficiencies.  On both occasions, Tolbert has failed to allege facts to cure the deficiencies.  It is apparent that any further attempt to cure the defective claims would be futile; therefore, no further leave to amend will be granted.

## VII.  Conclusion

For the foregoing reasons, the Court GRANTS in part and DENIES in part the Corrections Defendants' motion to dismiss (ECF No. 67).  The claims below are dismissed with prejudice:

(1) Count I – a civil conspiracy claim against all the Corrections Defendants;

(2) Count III – First Amendment denial of access to courts against all the Corrections Defendants;

(3) Count IV – Fourteenth Amendment due process claim against Corrections Defendant Wiggins;

(4) Count V – Pennsylvania state law negligence claim against all the Corrections Defendants;

(5) Count VI – Pennsylvania state law defamation claim against all the Corrections Defendants; and

(6) Count VII – Pennsylvania state law assumpsit claim against all the Corrections Defendants.

The motion is DENIED as to Count II – First Amendment retaliation claim against all the Corrections Defendants.  A pretrial scheduling order will be entered following Defendants' filing of an Answer to this claim.


DATED this 12th day of June, 2024.


BY THE COURT:


s/ RICHARD A. LANZILLO
RICHARD A. LANZILLO
Chief United States Magistrate Judge