IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA
JOHNSTOWN DIVISION

| | |
|---|---|
| KEITH C. TOLBERT, | ) Civil Action No. 3:23-CV-00018-CBB |
| Plaintiff, | ) |
| vs. | ) United States Magistrate Judge |
| | ) Christopher B. Brown |
| SECURITY CAPTAIN T. BOYCE, SECURITY OFFICER PAUL DABBS, C/O MARKS, ESTATE OF HEARING EXAMINER S. WIGGINS, MAILROOM SUPERVISOR C. WEIGLE, SECURITY OFFICER GIBSON, | ) |
| Defendants, | |

## MEMORANDUM OPINION[1]
## ON MOTION FOR SUMMARY JUDGMENT ECF No. 124

### I. Introduction

Plaintiff Keith C. Tolbert ("Tolbert"), proceeding pro se and in forma pauperis, initiated this 42 U.S.C. § 1983 civil action on January 27, 2023. ECF No. 1. After the Court's Memorandum Opinion on Defendants' Motion to Dismiss, Tolbert's only remaining claim is a First Amendment Retaliation claim against Defendants Boyce, Dabbs, Weigle, Marks, Gibson, and Wiggins, all staff at SCI-

---

[1] All parties have consented to jurisdiction before a United States Magistrate Judge; therefore the Court has the authority to decide dispositive motions, and to eventually enter final judgment. *See* 28 U.S.C. § 636, *et seq.*

Forest. ECF No. 92. This court has subject matter jurisdiction under 28 U.S.C. § 1331.

Pending before the Court is Defendants' Motion for Summary Judgment filed on April 22, 2025. ECF No. 124. Tolbert was granted multiple extensions to file an opposition brief and statement of facts, ECF Nos. 130, 132, 134, 139, 143. The original deadline of May 30, 2025 was extended until November 21, 2025 and the requests to file beyond that final date were denied. ECF Nos. 145, 147. In the end, after nearly seven months since the Defendant's filed their motion, Tolbert did not file an Opposition brief nor a Responsive Statement of Facts. Consequently, as the deadline to do so has passed, the Defendant's Motion is now ripe for consideration. ECF Nos. 124-127.

For the reasons below, Defendants' Motion for Summary Judgment is GRANTED. ECF No. 124.

## II. Tolbert's Violation of Local Rule 56.C.1

Before addressing the factual background underlying this action, the Court notes that Tolbert has failed to properly respond to Defendants' Statement of Material Facts (ECF No. 126), as required by Local Rule 56.C.1 A plaintiff must: respond to each numbered paragraph in the movant's concise statement; admit or deny the facts contained in the movant's concise statement; set forth the basis for denial if any fact within the movant's concise statement is not entirely admitted by the non-moving party, with appropriate citation to the record; and set forth, in separately numbered paragraphs, any other material facts at issue. *See* LCvR 56.C.1. Courts in this district require strict compliance with the provisions of Local

Rule 56. *See, e.g., Byron v. Columbia Gas of Pennsylvania,* No. 2:21-CV-01365-CCW, 2022 WL 17406052, at *1 (W.D. Pa. Dec. 2, 2022), *aff'd*, No. 22-3408, 2023 WL 8663876 (3d Cir. Dec. 15, 2023); *Angelopoulos v. HDR Eng'g, Inc.*, No. 2:19-CV-01578-CCW, 2021 WL 3056205, at *2 (W.D. Pa. July 20, 2021); *First Guard Ins. Co. v. Bloom Services, Inc.*, 2018 WL 949224, at *2-3 (W.D. Pa. Feb. 16, 2018); *Hughes v. Allegheny County Airport Auth.*, 2017 WL 2880875, at *1 (W.D. Pa. July 6, 2017).

    A non-moving party "faces severe consequences for not properly responding to a moving party's concise statement." *Hughes*, 2017 WL 2880875, at *1. Any alleged material facts "set forth in the moving party's Concise Statement of Material Facts . . . which are claimed to be undisputed, will for the purpose of deciding the motion for summary judgment be deemed admitted unless specifically denied or otherwise controverted by a separate concise statement of the opposing party." LCvR 56.E. While courts provide some leniency to pro se litigants when applying procedural rules, the Court "is under no duty to provide personal instruction on courtroom procedure or to perform any legal chores for the [pro se litigant] that counsel would normally carry out." *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 244 (3d Cir. 2013) (quoting *Pliler v. Ford*, 542 U.S. 225, 231 (2004)). Nor may pro se litigants ignore procedural rules that apply to parties assisted by counsel. *McNeil v. United States*, 508 U.S. 106, 113 (1993) (explaining "we have never suggested that procedural rules in ordinary civil litigation should be interpreted so as to excuse mistakes by those who proceed without counsel").

Tolbert had actual knowledge of these requirements and was informed by Court Order that statements of material fact "will for the purpose of deciding the motion for summary judgment be deemed admitted unless specifically denied or otherwise controverted by a separate concise statement of the opposing party." ECF No. 128 at 3-4.

Consequently, the Court will treat Defendants' Statement of Material Facts, ECF No. 126, as undisputed but will nonetheless consider any contradictory facts Tolbert asserts if they are properly supported by the record. *Whetstone v. Fraley & Schilling Trucking Co.*, No. 22-cv-1018, 2022 WL 4533847, at *2 (3d Cir. Sep. 28, 2022). *See also Boyd v. Citizens Bank of Pa., Inc.*, 2014 WL 2154902, at *3 (W.D. Pa. May 22, 2014) ("To the extent Plaintiff's statement of 'fact' specifically controverts Defendant's, the Court will consider these facts in determining" summary judgment).

### III. Factual Background

The following facts are not in dispute unless otherwise noted. In the Second Amended Complaint, Tolbert alleges Defendants Boyce, Dabbs, Marks, Wiggins, Weigle, and Gibson retaliated against him for filing lawsuits against the Department of Corrections by confiscating his legal mail and issuing him a misconduct that resulted in disciplinary custody. ECF No. 63 at ¶ 101.

On July 24, 2021, Defendant Dabbs twice scanned Tolbert's legal mail in the Rapiscan System Itemizer, which twice showed the mail tested positive for the presence of contraband. ECF No. 126 at ¶¶ 36-39. It was tested again via an air

scan on September 1, 2021 by two non-parties, and the mail once again tested positive. *Id.* at ¶ 42.

On September 8, 2021, Defendant Marks issued Tolbert misconduct # D612879, in which he was charged under the Pennsylvania Crimes Code 5123 (possession of contraband). *Id.* at ¶ 44. The misconduct alleged Tolbert's legal mail tested positive following an ion scan on July 24, 2021 and tested positive for an air scan on September 1, 2021. *Id.* at ¶¶ 45-46. Defendant Wiggins conducted a hearing on misconduct # D612879 on September 8, 2021, Tolbert pled not guilty, and the misconduct was dismissed without prejudice. *Id.* at ¶¶ 48-50.

On September 9, 2021, Defendant Gibson reissued a misconduct, now labeled # D612973, for a violation of Pennsylvania Crimes Code 5123 (possession or use of a dangerous or controlled substance). *Id.* at ¶ 51. *See also* ECF No. 127-7 at 1-8. The misconduct reiterated the testing results from the prior misconduct and added that Plaintiff's legal mail had a positive test result from a Nark II Test Kit which was then verified by Defendant Boyce. *Id.* at ¶¶ 52-54.

Tolbert presented his version of the events prior to the misconduct hearing, writing that there was no evidence that he "sent the Legal Mail or ever possess[ed] the Legal Mail in question," and that he "respectfully request[s] the Honorable Hearing Examiner" to "dismiss with prejudice Misconduct 612973 on the basis of lack of weight & sufficiency of evidence and no grounds based on DOC Policy DC-ADM 801 and Pennsylvania State Law." *Id.* at ¶¶ 56-57. The Hearing Examiner did not credit Tolbert's version and found that a preponderance of the evidence

5

supported the charge. *Id.* at ¶ 59. He was given 60 days in disciplinary custody effective September 13, 2021. *Id.* at ¶ 60.

Tolbert appealed to the Program Review Committee and the Facility Manager. *Id.* at ¶¶ 61, 64. Tolbert's appeals centered on a lack of evidence, and the fact that he had never possessed the legal mail because it was confiscated before he received it. *Id.* at ¶¶ 61-62, 64. *See also* ECF No. 127-7 at 5-8. In his second-level appeal, Tolbert argues anyone could have sent tainted mail to him, that there are "no facts [which] prove I knew the sender or possessed the mail," and that a "C/O could have tainted it in retaliation because I'm suing the DOC." *Id.* at ¶ 62. He does not mention retaliation in his appeal to the Facility Manager. *Id.* at ¶ 64. The Facility Manager dismissed the misconduct on October 7, 2021. *Id.* And after originally denying the appeal, the Program Review Committee dismissed the misconduct on October 8, 2021. *Id.* at ¶ 65.

Tolbert also filed four relevant grievances. *Id.* at ¶ 186. Tolbert filed Grievance # 939240 on August 5, 2021 and alleged staff improperly confiscated his legal mail. *Id.* at ¶¶ 188-97. *See also* ECF No. 127-15 at 1-5. Tolbert neither named the Defendants nor alleged his mail was confiscated in retaliation for filing grievances. *Id.* Tolbert did not appeal Grievance # 939240 to the Secretary's Office of Inmate Grievances and Appeals ("SOIGA") through the final level of review. *Id.*

Tolbert next filed Grievance # 945799 on September 8, 2021, and alleged that by being denied his legal mail, he was denied access to the courts. *Id.* at ¶¶ 198-201. *See also* ECF No. 127-16 at 1-2. Tolbert did not name the Defendants or allege

he was denied mail in retaliation for filing grievances. *Id.* Tolbert did not appeal Grievance # 945799 to SOIGA through the final level of review. *Id.* This grievance was rejected because, under DC-ADM 801, issues concerning misconduct charges cannot be addressed through the inmate grievance system. *Id.* at ¶ 201.

Tolbert filed Grievance # 945790 on September 14, 2021, and alleged cash slips were not returned to him and no money was taken out of his account showing his legal mail was processed. *Id.* at ¶¶ 202-218. *See also* ECF No. 127-17 at 1-7. Tolbert did not name any of the Defendants or grieve anything related to retaliation. *Id.* Tolbert appealed Grievance # 945790 with SOIGA outside of the proper time period and did not include all relevant information. *Id.*

Finally, Tolbert filed Grievance # 946630 on September 20, 2021 and alleged Defendant Boyce incorrectly penalized him by prohibiting him from having contact visits for a third offense drug misconduct. *Id.* at ¶¶ 219-22. *See also* ECF No. 127-18 at 1-4. The only Defendant he mentions in Grievance # 946630 is Defendant Boyce. *Id.* Tolbert does not allege Boyce was retaliating against him. *Id.* This grievance was rejected because, under DC-ADM 801, issues concerning misconduct charges cannot be addressed through the inmate grievance system. *Id.* at ¶ 221.

## IV. Standard of Review

The standard for assessing motions for summary judgment is well-settled. Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Court must ask whether the evidence presents "a sufficient disagreement to require submission to a jury or whether it is so one-sided

that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986).

In making this determination, "all reasonable inferences from the record must be drawn in favor of the nonmoving party and the court may not weigh the evidence or assess credibility." *Goldenstein v. Repossessors Inc.*, 815 F.3d 142, 146 (3d Cir. 2016) (cleaned up). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson*, 477 U.S at 247-48. An issue is "genuine" if a reasonable jury could hold in the nonmovant's favor with respect to that issue. *Id.*

This standard is somewhat relaxed with respect to pro se litigants. *Simmons v. Gilmore*, No. 2:17-CV-00996, 2021 WL 1215773, at *8 (W.D. Pa. Mar. 31, 2021) (citing *Anderson*, 477 U.S. at 256). Where a party is representing himself pro se, the complaint is to be construed liberally. *Renchenski v. Williams*, 622 F.3d 315, 337 (3d Cir. 2010). A pro se plaintiff may not, however, rely solely on his complaint to defeat a summary judgment motion. *See, e.g., Anderson*, 477 U.S. at 256 ("Rule 56(e) itself provides that a party opposing a properly supported motion for summary judgment may not rest upon mere allegation or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial."). At the summary judgment stage of the proceedings, the Court need not credit bald assertions or legal conclusions unaccompanied by evidentiary support. *Jones,* 214 F.3d at 407. "[A] pro se plaintiff is not relieved of his obligation under [Federal Rule of Civil Procedure] 56 to point to competent evidence in the record that is capable of

8

refuting a defendant's motion for summary judgment." *Dawson v. Cook*, 238 F. Supp. 3d 712, 717 (E.D. Pa. 2017) (citation omitted).

## V.   Discussion

Defendants move for summary judgment arguing Tolbert did not exhaust his administrative remedies on his First Amendment Retaliation claim against any Defendant.  ECF No. 124 at 4-9.  The Court agrees.

In the Defendants' thorough briefing they also raise arguments on the merits in that the record fails to establish the personal involvement of Defendants Weigle and Dabbs, that there is no genuine issue of material fact as to retaliation by any Defendant, and that Tolbert is not entitled to either compensatory or punitive damages.  *Id*. at 9-20.  However, as the case can be decided on exhaustion, the Court will not address Defendants' remaining arguments.

The Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a), provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."  As recently explained by the Court of Appeals:

> The exhaustion mandate is a "centerpiece" of the statute, *see Woodford v. Ngo*, 548 U.S. 81, 84 (2006), that serves three important statutory goals: "(1) to return control of the inmate grievance process to prison administrators; (2) to encourage development of an administrative record, and perhaps settlements, within the inmate grievance process; and (3) to reduce the burden on the federal courts by erecting barriers to frivolous prisoner lawsuits, *Spruill [v. Gillis]*, 372 F.3d [218,] 230 [3d Cir. 2004]. The PLRA requires "proper exhaustion," *Woodford*, 548 U.S. at 92, which means "complet[ing] the administrative review process in accordance with the applicable procedural rules." *Downey v. Pennsylvania Dep't of Corrections*, 968 F.3d 299, 305 (3d Cir. 2020)

9

> (quoting *Woodford*, 548 U.S. at 88). The only limit on § 1997e(a)'s mandate is that "administrative remedies must be available to the prisoner" as both a formal and practical manner. *Id.* (citing *Ross v. Blake*, 578 U.S. 632, 641-42 (2016)).

*Talley v. Clark*, 111 F.4th 255, 262 (3d Cir. 2024). An administrative remedy is unavailable, and administrative exhaustion is excused, when it "operates as a simple dead end(,) . . . is so opaque that it becomes, practically speaking, incapable of use, or when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation.'" *Downey*, 968 F.3d at 305 (quoting *Shifflett v. Korszniak*, 934 F.3d 356, 365 (3d Cir. 2019)) (cleaned up). "Just as inmates must properly exhaust administrative remedies per the prison's grievance procedures, prison officials must strictly comply with their own policies." *Id.*

The prison's grievance policy is what "define[s] the boundaries of proper exhaustion." *Jones v. Bock*, 549 U.S. 199, 218 (2007); *Spruill v. Gillis*, 372 F.3d 218, 230–31 (3d Cir. 2004) (explaining that "prison grievance procedures supply the yardstick for measuring procedural default."). The procedural requirements for exhaustion in each case "are drawn from the policies of the prison in question rather than from any free-standing federal law." *Shifflett*, 934 F.3d at 364. Proper exhaustion requires full compliance with the prison's deadlines and procedures, and an untimely or procedurally defective grievance or appeal does not satisfy the PLRA and precludes a prisoner from filing his claims in federal court. *Spruill*, 372 F.3d at 231; *Booth v. Churner*, 206 F.3d 289 (3d Cir. 2000). It is not the plaintiff's burden to demonstrate exhaustion. *Jones*, 549 U.S. at 216 (holding that "failure to exhaust is

10

an affirmative defense under the PLRA"). Rather, the failure to exhaust must be proven by the defendant. *Ray v. Kertes*, 285 F.3d 287, 295 (3d Cir. 2002).

Two Pennsylvania Department of Corrections ("DOC") policies are relevant here, DC-ADM 804,[2] which governs the grievance and appeals process in Pennsylvania correctional institutions, and DC-ADM 801[3] which governs inmate discipline. These are discussed in turn.

### Requirements for exhaustion under DC-ADM 804

According to DC-ADM 804, "every individual committed to [DOC] custody shall have access to a formal procedure through which to seek resolution of problems or other issues of concern arising during the course of confinement. DC-ADM 804 at 1. The DC-ADM 804 Inmate Grievance System sets forth three separate stages: First, the prisoner must timely submit a written grievance for review by the facility grievance coordinator using the approved form within fifteen working days of the incident, at which time the facility coordinator will assign a tracking number to the grievance and respond within fifteen business days. DC-ADM 804 §§ 1.A, C. The Inmate Grievance System provides that the grievance must include "a statement of facts relevant to the claim" and shall include "the date, approximate time, and location of the event(s) that gave rise to the grievance," "shall identify individuals directly involved in the events," and "shall specifically

---

[2]   *See* DC-ADM 804 Policy Statement, available online at: https://www.pa.gov/content/dam/copapwp-pagov/en/cor/documents/about-us/doc-policies/804%20Inmate%20Grievances.pdf (effective May 1, 2015) (last visited June 24, 2025).

[3]   As DC-ADM 001 was updated on January 22, 2024 – after the facts of this case look place – the Court will refer to the prior version of the Policy included in the record that was operative at the relevant time. *See* DC-ADM 001 Policy Statement at ECF No. 127-1 at 1-45 (effective July 2, 2015).

11

state any claims he wishes to make concerning violation of Department directives, regulations, court orders, or other law." DC-ADM 804 §1.A.11.

At the second stage in the DC-ADM 804 Inmate Grievance System, the inmate must timely submit a written appeal within fifteen working days from the initial review, and again the inmate will receive a written response thereto within fifteen working days. *Id.* at § 2.A. Lastly, the inmate must submit a timely appeal for final review to SOIGA within fifteen working days, and the inmate will receive a final determination in writing within thirty days thereafter. *Id.* at § 2.B.

### Requirements for exhaustion under DC-ADM 801

DC-ADM 801 governs the process for issuing and appealing misconducts. If an inmate believes a misconduct was retaliatory, they should follow the process outlined by DC-ADM 801 and should not file a grievance under DC-ADM 804. *See Gibson v. Flemming*, No. 2:16-CV-0392, 2019 WL 8017850, at *4 (W.D. Pa. Dec. 2, 2019), *report and recommendation adopted*, No. 2:16CV0392, 2020 WL 881436 (W.D. Pa. Feb. 24, 2020), *aff'd*, 837 F. App'x 860 (3d Cir. 2020) ("If an inmate alleges that a misconduct is retaliatory, he cannot file a grievance, but he can appeal the misconduct and argue that the misconduct was retaliatory.")

Under DC-ADM 801, an inmate can seek a first-level appeal to the Program Review Committee. ECF No. 127-1 at 29 (DC-ADM 801 §5.A). This first-level appeal must be submitted in writing within fifteen days of the misconduct hearing. *Id.* (DC-ADM 801 §5.A(1)). The Program Review Committee must then act on the appeal within seven working days. *Id.* at 30 (DC-ADM 801 §5.A(9).

The inmate can then seek a second-level appeal to the Facility Manager within seven days of the Program Review Committee's decision. *Id.* at 31. (DC-ADM 801 §5.B(1)). The inmate can then seek a final appeal with the Department of Corrections' Chief Hearing examiner. *Id.* (DC-ADM 801 §5.C). *See also Lee v. Janosko*, No. 18-CV-1297, 2021 WL 877761, at *4 (W.D. Pa. Mar. 9, 2021) (outlining misconduct appeal process under DC-ADM 801).

\*       \*       \*

Here, Defendants correctly argue Tolbert has failed to exhaust his claims under either of these procedures. *Boyd v. United States*, 396 F. App'x 793, 796 (3d Cir. 2010) ("[T]o pursue a claim in federal court based on retaliation, [the plaintiff] must first have exhausted administrative remedies for that claim"). In turn, the Court discusses Tolbert's four relevant grievances and Tolbert's misconduct appeal.

### a. Four Grievances - DC-ADM 804

Tolbert filed four grievances related to either his confiscated legal mail and the misconduct but none were properly exhausted. ECF No. 126 at ¶¶ 186-87.

<u>Grievance #939240</u>:

Tolbert did not appeal Grievance # 939240 to SOIGA and therefore failed to exhaust. *Id.* at ¶ 197; Grievance # 939240 (Aug. 4, 2021) at ECF No. 127-15 at 1-5. *See also Alexis v. Connors*, No. 23-2502, 2024 WL 3534480, at *4 (3d Cir. July 25, 2024) (finding District Court correctly concluded plaintiff did not exhaust his administrative remedies when his grievance was rejected and he did not appeal its rejection).

<u>Grievance # 945790</u>:

13

Tolbert appealed Grievance # 945790 to SOIGA, but his appeal was untimely, did not include the proper documentation, and he procedurally defaulted. *Id.* at ¶¶ 216-218; Grievance # 945790 (Sept. 14, 2021) at ECF No. 127-17 at 1-7. *See also Neidig v. Med. Staff, FCI McKean*, 07-229, 2025 WL 863694, at *5 (W.D. Pa. Mar. 10, 2025) ("Plaintiff procedurally defaulted by failing to file his claim within the specified twenty day period and therefore failed to properly exhaust his administrative remedies"). He therefore failed to exhaust in this respect.

Grievance #'s 945799 and 946630:

Tolbert's Grievance # 945799 and Grievance # 946630, which both dealt with issues with his misconducts, were rejected as they were filed under DC-ADM 804. ECF No. 126 at ¶¶ 201; 219-21; Grievance # 945799 (Sept. 8, 2021) at ECF No. 127-16 at 1-2; Grievance # 946630 (Sept. 20, 2021) at ECF No. 127-18 at 1-4. As both grievances related to misconducts, Tolbert was advised they needed to be filed as appeals under DC-ADM 801. ECF No. 126 at ¶¶ 201; 219-21. Tolbert did not do so and therefore he failed to exhaust here as well. *Id. See also Gibson,* 2019 WL 8017850, at *7 (W.D. Pa. Dec. 2, 2019), *report and recommendation adopted,* 2:16-0392, 2020 WL 881436 (W.D. Pa. Feb. 24, 2020), *aff'd*, 837 F. App'x 860 (3d Cir. 2020) (granting summary judgment for defendants because plaintiff did not appeal the misconduct to the Chief Hearing Examiner under DC-ADM 801); *Sloan v. Chambers*, No. 3:CV-12-1954, 2016 WL 4245550, at *9 (M.D. Pa. Aug. 11, 2016) ("In light of the record before the Court . . . Defendants have carried their burden to

adequately demonstrate his failure to properly exhaust his available administrative remedies to challenge the findings of the Hearing Examiner's decision").

*     *     *

As to all grievances, there is no evidence in the record that the grievance process was unavailable to Tolbert or that he was thwarted from exhausting his remedies. *See generally*, ECF No. 126. *See also Hatten v. Bledsoe*, 782 F. App'x 91, 96, n.2 (3d Cir. 2019) (finding there was "no basis to find that administrative remedies were unavailable" to a plaintiff because he "presented no evidence that would support a finding that he was thwarted from exhausting any remedy related" to his claim); *Campbell v. Doe*, No. CV 12-2750, 2018 WL 4616068, at *4 (D.N.J. Sept. 26, 2018) (finding plaintiff did not provide "facts sufficient to support a finding that his administrative remedies were unavailable" when plaintiff did not include any documentation or testimony showing a "valid basis" for failing to exhaust). Absent such a showing, the failure to exhaust is not excused.

Assuming arguendo that Tolbert had properly exhausted the four grievances, his First Amendment Retaliation claim still would not be exhausted as the four grievances do not adequately provide notice to prison officials. "[T]he primary purpose of a grievance is to alert prison officials to a problem, not to provide personal notice to a particular official that he may be sued." *Williams v. Beard*, 482 F.3d 637, 640 (3d Cir. 2007). Therefore, a grievance does not need to name a particular defendant, but must adequately describe the defendant so that the prison officials can determine who is involved in the problem. *See Godfrey v. Little*, No.

3:22-CV-892, 2025 WL 2792250, at *17 (M.D. Pa. Sept. 30, 2025) (finding grievance was "wholly insufficient" to alert prison officials that plaintiff was raising concerns about defendants because he did not provide sufficient information to identify them in the absence of their names). Additionally, to provide proper notice of an inmate's issue, the grievance must be related to the claims in the case. *Jones v. Boone*, No. 3:21-CV-01977, 2023 WL 2563081, at *7 (M.D. Pa. Mar. 17, 2023) ("Jones has not exhausted his administrative remedies. . . because he has not filed any inmate grievances related to his underlying claims").

None of the grievances implicate the Defendants in any retaliatory actions. ECF No. 126 at ¶¶ 186-221. First, none of the grievances mention anything actions that can be construed as retaliation. *Id.* Second, three of the grievances do not name (or describe) any actions by Defendants. *Id.* at ¶¶ 186-218. Only Grievance # 946630 mentions a Defendant, but it still does not notify prison officials that Defendant Boyce is allegedly targeting him in retaliation because, in the grievance, Tolbert is challenging the sufficiency of the evidence for the misconduct and does not describe any retaliatory actions by Boyce. ECF No. 126 at ¶¶ 219-21. Therefore, these grievances do not support Tolbert's Retaliation claim against any Defendants.

### b. Misconduct Appeal under DC-ADM 801

Lastly, Tolbert failed to exhaust Misconduct # D612973 in several respects. Although he appealed this misconduct, he did not provide prison officials with proper notice of his First Amendment Retaliation claim nor did he fully exhaust to the third level of review. First, the content of the appeal does not alert prison

16

officials to any potential retaliation by Defendants. As explained above, his first-level appeal to the Program Review Committee and second-level appeal to the Facility Manager dealt with the sufficiency of evidence, *i.e.* the fact that he never possessed the contraband (legal mail), and, as a result, that there were no grounds for such a misconduct based on DOC-Policy ADM 801 and Pennsylvania State Law. *Id.* at ¶¶ 56-57, 61, 64. *See also* ECF No. 127-7 at 5-8. In his first-level appeal, Tolbert briefly mentions that a corrections officer "could have" retaliated against him for filing a lawsuit by tainting the mail. *Id.* at ¶ 62. This is one theory among many, including that someone from outside the prison sent him the mail. *Id.* It is also not the crux of his argument, and he states it in passing in support of his argument that he never possessed the mail. *Id.* Further, Tolbert did not mention this theory in either his original statement before the misconduct hearing, nor in his appeal to the Facility Manager. *Id.* at ¶¶ 56-57, 64.

    This statement in passing at one level of the appeal is insufficient to put prison officials on notice about Tolbert's First Amendment retaliation claim. His appeals centered on the sufficiency of the evidence and grounds under DC-ADM 801 – it did not argue that he was "set up." *Compare Lane v. Zirkle*, 11-893, 2012 WL 6860255, at *6 (W.D. Pa. Dec. 21, 2012), *report and recommendation adopted*, No. 11-893, 2013 WL 164488 (W.D. Pa. Jan. 15, 2013) (dismissing plaintiff's claims for failure to exhaust administrative remedies where none of the grounds raised in his appeal from the misconducts related to the plaintiff's retaliation claim before the court and were insufficient to place the defendants on notice of the plaintiff's claim)

17

*with Tillery v. Wetzel,* No. 3:16-CV-0235, 2019 WL 480485, at *10 (M.D. Pa. Feb. 7, 2019) ("Tillery's appeal provided more than adequate notice of his retaliation claim in that he was alleging that the institution was out to get him, that he was 'set up', and that he was found guilty based on his 'reputation'").

Second, and perhaps more significantly, it is undisputed Tolbert failed to appeal this misconduct to the third-level appeal. *Id.* at ¶¶ 64-65. His misconduct was dismissed by both the Facility Manager and the Program Review Committee, and Tolbert did not continue to pursue his claims any further. *Id.* The fact that he did not continue to appeal shows perhaps that he got what he wanted – for the misconduct to be overturned, not retribution for any alleged retaliatory misconducts. *See Gibson,* 2019 WL 8017850, at *7; *Sloan,* 2016 WL 4245550, at *9. Regardless of the reason, the fact remains he failed to fully exhaust the matter.

It is undisputed that Tolbert did not exhaust his administrative remedies under either DC-ADM 804 or DC-ADM 801 for his First Amendment Retaliation claim against Defendants. His grievances and misconduct appeal were not fully exhausted and did not provide adequate notice to prison officials of his First Amendment Retaliation claim. Accordingly, Defendants' Motion for Summary Judgment on Tolbert's First Amendment Retaliation claim against all Defendants will be GRANTED. The Court declines to address any of Defendants' remaining arguments on the merits of the retaliation claim or the availability of damages.

VI.  **Conclusion**

Therefore, for the reasons set forth herein, the Court finds that no genuine issues of material fact exist, and Defendants' Motion shall be GRANTED. An

appropriate Order will be issued. Final Judgment pursuant to Federal Rule of Civil Procedure 58 will be entered by separate Order.

DATED this 22nd day of December, 2025.

BY THE COURT:

s/Christopher B. Brown
Christopher B. Brown
United States Magistrate Judge


cc:   KEITH C. TOLBERT
      LZ4998
      SCI FOREST
      P.O. Box 307
      286 Woodland Drive
      Marienville, PA 16239

      All Counsel of Record, *via ECF*